■ In the Matter of SAMUEL MOFFETT, on Behalf of SARAH MOFFETT, Petitioner, v BARBARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent State commissioner dated August 29, 1978 and made after a statutory fair hearing, which modified a determination of the local agency by further reducing the amount of medical assistance to be received by the petitioner. Petition granted to the extent that the determination is annulled, on the law, without costs or disbursements, and the matter is remanded to the respondents to determine the amount of medical assistance petitioner is to receive for the period from May 5, 1977 through June 4, 1977, in accordance herewith. Petitioner Samuel Moffett and his wife Sarah, while residing in Ireland, entered into negotiations for the purchase of a house in Newburgh, New York. The house was to be purchased "as is". Mr. Moffett was fully aware that it had no plumbing system, heating system, septic system or other essential services. The Moffetts came to the United States on April 21, 1977 and gave a $1,000 down payment on the house the following day. Unfortunately, Mrs. Moffett became ill on April 22, 1977. She was admitted to St. Luke's Hospital in Newburgh on April 24, 1977 and was treated for a lung infection. On May 5, 1977 she was transferred to Albert Einstein Medical College in New York City and, after open heart surgery, was released on June 5, 1977. Medical bills for her hospital stay totaled $24,341.15. The Moffetts applied for Medicaid on June 30, 1977. Prior to and during his wife's illness, Mr. Moffett made a number of expenditures. On April 22, 1977, as indicated above, he made a $1,000 down payment on the house. He purchased a car ($1,850) and a trailer home ($1,600 to be used until the house was habitable) on April 30, 1977. In addition, contracts for the installation of essential improvements, such as heating, plumbing, and septic systems and a water well, were entered into with respect to the house. The Moffetts' initial application for Medicaid was rejected by the local agency on August 18, 1977 because, although Mrs. Moffett was certified as disabled under Federal supplemental security income criteria (see US Code, tit 42, § 1381 *et seq.*), they had excess resources available. A fair hearing was held and the State commissioner decided, on November 30, 1977, that the Moffetts were entitled to medical assistance for portions of the medical bills in excess of their available resources. The local agency recomputed the resources available and on March 30, 1978 determined that Mrs. Moffett was ineligible for medical assistance for bills incurred during

April, 1977 because of excess resources, but that she was eligible to recover for bills incurred between May 1, 1977 though June 4, 1977 subject to her utilizing $10,184.38 in excess resources. On July 17, 1978 a second fair hearing was held and on August 29, 1978 the State commissioner modified the determination of the local agency concluding that on May 4, 1978 the Moffetts had excess available resources of $18,687.96. The Moffetts then brought this article 78 proceeding. An applicant for medical assistance has the burden of proving her eligibility (see *Matter of Vanderhall v Toia,* 67 AD2d 685; *Matter of Madeley v Bates,* 56 AD2d 629). In determining an applicant's eligibility for Medicaid (see Social Services Law, § 363 *et seq.),* certain exemptions are allowed when calculating the applicant's excess available resources (see Social Services Law, § 366, subd 2, par [a]). These include a homestead exemption (see Social Services Law, § 366, subd 2, par [a], cl [1]; 18 NYCRR 360.5 [c] [1] [ii] [a]) and an exemption for essential personal property such as a car (see Social Services Law, § 366, subd 2, par [a], cl [2]; 18 NYCRR 360.5 [c] [1] [ii] [b]; 360.23 [e] [4]). The State commissioner, in calculating the Moffetts' excess available resources, did not allow an exemption for the $1,000 deposit placed on the home on April 22, 1977, the $1,850 expended for the purchase of a car on April 30, 1977 or any of the expenditures for installation of essential services in the home. Therefore, the State commissioner's determination cannot stand. Only those resources *actually* available to a Medicaid applicant can be considered in determining the applicant's eligibility for assistance (see *Matter of Dumbleton v Reed,* 40 NY2d 586; Social Services Law, § 366, subd 2, par [b]). Both the $1,000 and $1,850 amounts can be attributed directly to an allowable exemption; the $1,000 down payment on the house to the homestead exemption (see Social Services Law, § 366, subd 2, par [a], cl [1]), and the $1,850 payment for the purchase of a car to the exemption for essential personal property (see Social Services Law, § 366, subd 2, par [a], cl [2]; 18 NYCRR 360.23 [e] [4]). Neither amount can be considered an available resource on May 4, 1977. The State commissioner's interpretation of social legislation, which Medicaid clearly is, must be reasonable and humane in accordance with its manifest intent and purpose (see *Matter of Sabot v Lavine,* 42 NY2d 1068). At bar, the State commissioner's determination that resources expended for the installation of essential services in a home in order to make it habitable are not exempt from consideration as excess available resources is not reasonable and humane. These expenditures are intimately connected with the Moffetts' home and must come within the homestead exemption (see Social Services Law, § 366, subd 2, par [a], cl [1]). Homestead is defined by the regulations as "the home and land owned and occupied by an applicant" (18 NYCRR 360.23 [b]). In order for a house to qualify under the exemption it must be actually occupied (see *Matter of Galcia,* 59 Misc 2d 511). The State commissioner correctly determined that the Moffetts' house was entitled to an exemption. However, in order for the Moffetts to actually occupy their home essential improvements such as plumbing, water and heat had to be installed. As such, these expenditures cannot be considered excess available resourses. Moreover, these expenditures cannot be considered spurious as the State commissioner now argues. The expenditures were necessary in order to make the Moffetts' home habitable and were contemplated well before Mrs. Moffett became ill. Accordingly, the determination of the State commissioner must be annulled. Mangano, J. P., Rabin, Gulotta and Margett, JJ., concur.