2000 ND 43

**Margaret (Peggy) KRYZSKO,
Petitioner and Appellant,**

v.

**RAMSEY COUNTY SOCIAL SER-
VICES and North Dakota Department
of Human Services, Respondents and
Appellees,**

**No. 990112.**

Supreme Court of North Dakota.

March 21, 2000.

Duane Houdek, Legal Assistance of North Dakota, Bismarck, ND, for petitioner and appellant.

Jean R. Mullen, Assistant Attorney General, Bismarck, ND, for respondents and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Margaret Kryzsko appealed from a district court order affirming the North Dakota Department of Human Services ("Department") decision to deny Medicaid benefits to Kryzsko because her available assets exceed the maximum allowed. We affirm.

[¶ 2] Kryzsko is a 52–year–old mentally disabled woman. She is the beneficiary of a trust ("Kryzsko trust") established through a will by her deceased father, Alfred J. Kryzsko. Kryzsko's sister, Sally Stocker, was appointed to administer the trust. It was originally funded with $32,-000 on January 1, 1996, from which Kryzsko was being paid $450 a month. In January 1997 the trust principal of $32,-539.10 was invested in a Certificate of Deposit from which Kryzsko receives a monthly payment of $500. Under the amortization schedule, Kryzsko will continue to receive payments of $500 a month until July 2003, when the trust principal is exhausted.

[¶ 3] Kryzsko originally applied for Medicaid benefits through Ramsey County Social Services in August 1994. The county denied the benefits because Social Security had denied Kryzsko benefits, as she was not eligible under Social Security's disability or blindness standards. The county informed Kryzsko it may reverse the denial if Social Security reversed its decision and found her disabled. After Social Security reversed its denial, the county re-opened Kryzsko's application. On February 12, 1997, the county notified Kryzsko she was retroactively eligible for Medicaid benefits April 1995 through December 1995, but she was ineligible after December 31, 1995, because her countable assets, including the Kryzsko trust, exceeded the maximum $3,000 allowed for her household.

[¶ 4] Kryzsko appealed the decision to the Department. After a hearing, an Administrative Law Judge ("ALJ") found the trust was a support trust and therefore, the assets of the trust are deemed available to Kryzsko and must be considered in determining her eligibility for Medicaid benefits. The Department adopted the ALJ's finding. Kryzsko appealed to the district court, which affirmed the decision.

[¶ 5] When a district court decision reviewing an administrative agency decision is appealed to this Court, we review the decision of the agency and look to the record compiled before it. *Stewart v. North Dakota Workers Comp. Bureau*, 1999 ND 174, ¶ 7, 599 N.W.2d 280. Our review of an administrative agency decision is governed by N.D.C.C. §§ 28–32–19 and 28–32–21. *Id.* We affirm the agency's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or the agency's rules or procedures deprived the claimant of a fair hearing. *Id.* In determining whether the agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence based on the entire record. *Id.* It is the agency's responsibility to assess the credibility of witnesses and resolve conflicts in the evidence. *Id.*

[¶ 6] Medicaid is a cooperative federal-state program designed to furnish financial assistance to needy persons for their medically necessary care. *Allen v. Wessman,* 542 N.W.2d 748, 752 (N.D.1996). Each state electing to participate in the Medicaid program is required to establish a plan to implement the program in the individual state. 42 U.S.C. § 1396a. North Dakota has elected to participate in the program and has designated the Department to implement the program in the state. N.D.C.C. § 50–24.1–01.1 Thus, the Department has adopted rules to implement the Medicaid program and to determine the conditions of eligibility for Medicaid benefits. *See* N.D. Admin. Code § 75–02–02.1.

[¶ 7] An applicant for Medicaid benefits must prove eligibility. *Allen,* 542 N.W.2d at 752. " 'Medicaid is intended to be the payer of last resort, that is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program.' " *Id.* (quoting *New York State Dep't of Social Servs. v. Bowen,* 846 F.2d 129, 133 (2nd Cir.1988)). Thus, the Department considers whether the applicant has sufficient assets to meet the costs of necessary medical care and services. N.D.C.C. § 50–24.1–02. An asset must be "available" to the applicant to be considered. N.D. Admin. Code § 75–02–02.1–25(2). No one-person unit with total available assets of more than $3,000.00 is eligible for Medicaid. N.D. Admin. Code § 75–02–02.1–26.

[¶ 8] While certain assets are exempt from consideration, trusts available to the applicant are counted as assets. N.D. Admin. Code § 75–02–02.1–31. "Support trusts" are available to the applicant and considered in an applicant's assets, whereas "discretionary trusts" are only available to the extent amounts are actually distributed to the beneficiary. N.D. Admin. Code § 75–02–02.1–31(3)(4). The regulation regarding support trusts states:

> For purposes of this subsection, "support trust" means a trust which has, as a purpose, the provision of support or care to a beneficiary. The purpose of a support trust is indicated by language such as "to provide for the care, support, and maintenance of …"; "to provide as necessary for the support of …"; or "as my trustee may deem necessary for the support, maintenance, medical expenses, care, comfort, and general welfare". No particular language is necessary, but words such as "care", "maintenance", "medical needs", or "support" are usually present. *The term includes trusts which may also be called "discretionary support trusts" or "discretionary trusts", so long as support is a trust purpose.* This subsection applies without regard to:
>
> (1) Whether or not the support trust is irrevocable or is established for purposes other than to enable a beneficiary to qualify for medicaid or any other benefit program where availability of benefits requires the establishment of financial need; or
>
> (2) Whether or not the discretion is actually exercised.

N.D. Admin. Code § 75–02–02.1–31(3) (emphasis added).

[¶ 9] The regulations define discretionary trusts as follows:

> For purposes of this subsection, "discretionary trust" means any trust in which one or more trustees is permitted to exercise any discretion with respect to distribution to the beneficiary, but does not include any trust within the definition of a "support trust", as that term is defined in subsection 3.

N.D. Admin. Code § 75–02–02.1–31(4).

[¶ 10] In *Hecker v. Stark Cty. Social Serv. Bd.,* 527 N.W.2d 226, 232 (N.D.1994), a majority of this Court found the sentence underlined above in the Department's regulation regarding support trusts void, as applied.

[¶ 11] Herman Hecker was the sole beneficiary of a trust from his deceased mother. The trust agreement stated as follows:

(a) *Introduction.* It is the Grantor's primary concern in creating this Trust that it continue in existence as a supplemental fund to public assistance for her handicapped child, Herman Hecker, hereinafter referred to as the 'beneficiary', throughout his life as she would provide if she were personally present. . . .

(b) *Special Needs.* The Trustee shall pay to or apply to the benefit of the beneficiary, for his lifetime, such amounts from the principal or income, up to the whole thereof, as the Trustee in the Trustee's sole discretion may from time to time deem necessary or advisable for the satisfaction of the beneficiary's special needs. Any income not distributed shall be added to principal. As used in this instrument, 'special needs' refers to the requisites for maintaining the beneficiary's good health, safety, and welfare when, in the sole discretion of the Trustee, such requisites are not deemed provided by any public agency, office, or department of the State of North Dakota, or of any other state, or of the United States. 'Special needs' include, but are not limited to, medical and dental expenses, clothing and equipment, programs of training, education, treatment, and essential dietary needs to the extent that such needs are not provided by any government entity.

*Id.* at 228.

[¶ 12] This Court concluded it was the settlor's intent to create a discretionary trust rather than a support trust, reasoning the language in the trust giving the trustee great discretionary power was characteristic of a discretionary trust. The plain language of the trust also demonstrated the settlor's intent was to create a " 'supplemental fund to public assistance.' " *Id.* at 230.

[¶ 13] Since the settlor's intent was clear, this Court went on to determine the effect of the Department's regulation that negated the settlor's intent. *See* N.D. Ad-min. Code § 75–02–02.1–31(3)(a) (saying, "The term includes trusts which may also be called 'discretionary support trusts' or 'discretionary trusts', so long as support is a trust purpose"). The Department asserted its regulation allowed it to deem the trust an asset available to *Hecker.* The majority held the portion of N.D. Admin. Code § 75–02–02.1–31(3) allowing the Department to negate the intention of the settlor void because it overruled judicial precedent and exceeded the rulemaking authority of the Department. *Id.* at 232.

[¶ 14] With the *Hecker* precedent in mind, the key issue here is whether the Kryzsko trust is a support trust or a discretionary trust. The Kryzsko trust provides in relevant part:

I devise Margaret Lee Kryzsko . . . share of my estate to my Trustee to administer said share for the benefit of her by paying to or applying for her benefit so much of the income and/or principal of such share as the Trustee, in her sole discretion, thinks necessary or advisable to provide for the proper care, maintenance, support, and education of Margaret Lee Kryzsko . . . provided, that the Trustee must make at least an annual distribution of the Trust income, or more frequent distribution as the Trustee, in its sole discretion deems necessary. . . .

[¶ 15] In finding the above trust to be a support trust, the ALJ distinguished this trust from the trust in *Hecker* and reasoned as follows:

5. Considering the trust language, the trust contains elements of both a support trust and a discretionary trust. The trustee is authorized to invade the corpus of the trust "to provide for the proper care, maintenance, support, and education" of Ms. Kryzsko, which is an element of a support trust. N.D. Admin. Code § 75–02–02.1–31(3)(a). The trustee is given authority to exercise "sole discretion" as she "thinks necessary or advisable", which is an element

of a discretionary trust. N.D. Admin. Code § 75–02–02.1–31(4)(a)....

6. The trust language is ambiguous and therefore requires consideration of extrinsic evidence to determine the trustor's intent. The trustor's intent is crucial to the determination of the nature and extent of the beneficiary's interest in the trust....

7. A typical provision of a discretionary trust is that the trustee has uncontrolled discretion over payment to the beneficiary....

8. Considering the provisions of the trust, the trustee does not have uncontrolled and absolute discretion to determine distributions for the benefit of Ms. Kryzsko. The trustor has imposed a duty on the trustee to determine how much is the "proper" amount of care, maintenance, support and education for Ms. Kryzsko ... The trustee has a duty to provide what is proper. Therefore, the trustor has established an enforceable standard against which the reasonableness of the trustee's exercise of discretion may be judged. Ms. Kryzsko, if she believed she were not receiving the proper amount of care, maintenance, support and education, could seek a court order requiring the trustee to exercise discretion consistent with the trustor's intention.

9. The trust language suggests that the trustor's intent was to provide for Ms. Kryzsko's future care. The trust language does not suggest that the trust was intended to be a supplement to other sources of care, such as medical assistance or other public assistance programs. There is no indication the trustor intended the trust should not be used to provide primary support or maintenance for Ms. Kryzsko. This is distinguishable from the case of *Hecker*

*v. Stark County Social Service Board,* 527 N.W.2d 226 (N.D.1994).

10. The authority granted to the trustee in the Kryzsko trust is essentially the same as the authority of the trustee in *Bohac v. Graham,* 424 N.W.2d 144 (N.D. 1988), which the Supreme Court determined to be a general support trust.

11. The preponderance of the evidence shows that the trust established for Ms. Kryzsko's benefit is a support trust and therefore, the assets of the trust are deemed available to her and must be considered for the purpose of determining her eligibility for Medicaid benefits....

[¶ 16] The Kryzsko trust contains elements of both a discretionary and a support trust. The trust uses language such as "sole discretion." However, it also instructs the trustee to provide for the "proper care, maintenance, support, and education" of Kryzsko. *See* N.D. Admin. Code § 75–02–02.1–31(3) (stating "[t]he purpose of a support trust is indicated by language such as 'to provide for the care, support, and maintenance of ...' "). The trust requires annual income distribution. While the trustee may have some discretion as to the timing or number of payments, she must annually distribute the trust income.

[¶ 17] We agree with the ALJ that the trust does not provide the trustee with unfettered discretion. First, even the use of terms like "absolute" or "uncontrolled" do not give the trustee unlimited discretion. *See* III William F. Fratcher, *Scott on Trusts* § 187 (1988). Second, of considerable importance in determining the amount of discretion is whether there is any standard by which the trustee's conduct can be judged.[1] *Id.* Here, there is a

1. The dissent's characterization "that the trustee *may* ... use the assets of the trust for support related expenses" suggests the trustee has the option to support or not support the beneficiary. (Emphasis added). We disagree and conclude such an interpretation is contrary to the clear intent of the trust to be used as support for Kryzsko. *See* III Scott, *supra,* § 187 (stating if a trustee is "directed to pay as much of the income and principal as is necessary for the support of a beneficiary, he can be compelled to pay at least the minimum

standard: the "proper care, maintenance, support, and education" of Kryzsko. Bogert's treatise on trusts defines a discretionary trust as one where the:

> trustee shall have absolute and uncontrolled discretion whether to pay or apply trust income or principal to or for the benefit of a named beneficiary, *without fixing any standard or guide which the trustee is to consider,* and that income which the trustee does not elect to use for the beneficiary shall be accumulated or paid to another or to a class of other persons.

George G. Bogert, *Trusts and Trustees* § 228 (1981). Such a discretionary trust "must be distinguished from trusts where the discretion of the trustee pertains only to the time or manner of the payments, or to the size of the payments needed to achieve a certain purpose, for example, *to support the beneficiary." Id.* (emphasis added).

[¶ 18] An Ohio case involving a trust similar to the Kryzsko trust illustrates how a trust may not be discretionary where it uses purely discretionary language, but imposes on the trustee the requirement of support. *Martin v. Martin,* 54 Ohio St.2d 101, 374 N.E.2d 1384, 1389 (1978). The trust gave authority to the trustee to distribute *"in its sole and absolute discretion,* so much of the income and the principal of her share as it, *in its sole and absolute discretion,* determines to be *necessary for her care, comfort, maintenance and general well-being* for and during her lifetime." *Id.* (emphasis added). The court found the trust to be neither purely support nor purely discretionary. The court stated the trust "confers upon the trustees 'absolute and sole discretion,' but defines the standard by which that discretion is to be employed." While the Kryzsko trust uses less stringent language than the trust in *Martin,* "sole discretion," rather than "sole and absolute discretion," the support language qualifies the discretionary language.

amount which in the opinion of a reasonable

It provides a standard by which the trustee's exercise of discretion may be judged.

[¶ 19] The clause that makes annual income distributions mandatory is also relevant. While it does not by itself demonstrate the corpus is an asset available to the beneficiary, it does provide additional evidence the purpose of the trust was to provide for Kryzsko's support and demonstrates the trust is not truly discretionary because the trustee cannot totally exclude the beneficiary. *See Estate of Cavenaugh v. Comm'r,* 51 F.3d 597, 601 (5th Cir.1995) (finding trust distributions not absolutely discretionary where the trustee was required to make income distributions "monthly or at the end of such other periods as may be necessary or desirable in the discretion of the Trustee"); *Ex Parte Boykin,* 656 So.2d 821, 827 (Ala.Civ.App. 1994) (finding a trust is a true discretionary trust only where the trustee has complete discretion to pay or totally exclude the beneficiary); Bogert, *supra,* § 228 n. 5 (concluding it would be a strained construction to treat a trust as a discretionary trust when the only discretion given the trustee is as to the time of payment of income not as to payment or non-payment).

[¶ 20] We agree with the ALJ that this case is distinguishable from *Hecker.* In *Hecker* we noted "[t]he trust unequivocally states that it is to be a 'supplemental fund to public assistance.' " 527 N.W.2d at 230. We said the trust "language plainly indicates an intent not to provide primary support or maintenance for the beneficiary." *Id.*

[¶ 21] Unlike the trust analyzed in *Hecker,* the trust language here indicates no intent to be a supplemental rather than a primary source of support for the beneficiary or to look to the state first for care before trust assets are used up. Instead the language instructs the trustee to administer moneys "necessary or advisable to provide for the proper care, maintenance, support, and education of" Kryzsko.

man would be necessary").

After this Court stated in *Hecker* the trust language indicated an intent not to provide primary support for the beneficiary, the citation which followed instructed, *"Compare Bohac,* 424 N.W.2d 144." *Id.* at 230.

[¶ 22] A close analysis of *Bohac v. Graham,* 424 N.W.2d 144 (N.D.1988), a decision which the majority did not reverse in *Hecker,* reveals it is more analogous to the present case than *Hecker.* In *Bohac,* Anne Bohac, who suffered from multiple sclerosis, was the beneficiary of a testamentary trust devised by her brother. The relevant portion of the trust stated, "The Trustee shall distribute all the net income annually unto my sister, Anne Bohac, and is further authorized to give my said sister any portion of the Trust Property as my said Trustee may deem necessary for her support, maintenance, medical expenses, care, comfort and general welfare." *Id.* at 145. The Grand Forks County Social Service Board denied Anne medical assistance benefits, because it concluded the trust principal was an asset available to her. The Department affirmed the decision but, on appeal, the district court reversed concluding the trust was a discretionary trust and thus the corpus could not be counted as an available asset. We reversed the district court's decision and concluded evidence demonstrated the trust was a support trust.

[¶ 23] The trust included elements of both a discretionary trust and a support trust. It gave discretion to the trustee to invade the corpus, but not uncontrolled discretion. It authorized invasion of the corpus for Anne's " 'support, maintenance, medical expenses,' and 'care,' " but went further and allowed "invasion of corpus for her 'comfort and general welfare.' " *Id.* at 146. We found "[i]nclusion of provisions for items such as 'comfort' and 'general welfare' may take the trust language outside that of a general support trust." [2] *Id.*

[¶ 24] Since the trust language was ambiguous, we considered extrinsic evidence to determine the settlor's intent. We agreed with the Department, which "[a]fter considering the language of the trust, the circumstances surrounding its creation, and testimony of the draftsman ... found that Frank's primary intent was to provide for Anne's future care." *Id.* The Department said:

(3) The paramount intent of the appellant's brother in creating the trust was to provide for her future care, including medical care, and he was well aware at the time he created the trust that the appellant's condition would likely not improve, but would probably gradually deteriorate in time so as to require nursing home care.

(4) Neither the trust document, nor the surrounding circumstances at the time it was drafted, suggest that the appellant's brother intended the trust corpus to be preserved for subsidiary beneficiaries at the expense of the general care of the appellant, *nor do they suggest that the trust was intended to be supplementary to other sources of care, such as public assistance programs.*

*Id.* (quoting Department's decision) (emphasis added).

[¶ 25] The Kryzsko trust uses language such as "sole discretion" in describing the trustees authority, which, arguably is more discretionary than the Bohac trust's language authorizing invasion of the corpus as the "Trustee may deem necessary" for Bohac's "support...." *Id.* at 145. However, the trust in *Bohac* allowed for invasion of the corpus for more than the beneficiary's support and also included her "comfort and general welfare," the inclusion of which we said "may take the trust language outside that of a general support trust." 424 N.W.2d at 146.

[¶ 26] Here, no such broad "comfort and general welfare" language was used. The

---

**2.** Provisions in the Administrative Code codified after *Bohac* include language of "comfort" and "general welfare," as indicative of a support trust, not a discretionary trust. N.D. Admin. Code § 75–02–02.1–31(3).

Kryzsko trust uses only support language, directing the trustee to provide for the "care, maintenance, support, and education of" Kryzsko. *See* N.D. Admin. Code § 75–02–02.1–31(3) (stating "[t]he purpose of a support trust is indicated by language such as 'to provide for the care, support, and maintenance of . . .'"). This support language provides a clear standard by which the reasonableness of the trustee's discretion may be judged.

[¶ 27] A determinative issue in *Bohac*, which distinguishes it from *Hecker*, was that the trust was not intended to be a supplementary source of income. Similarly, in this case, the ALJ said, "There is no indication the trustor intended the trust should not be used to provide primary support or maintenance for Ms. Kryzsko." The plain language of the trust demonstrates an intent by the trustor to provide for the future support and care of Ms. Kryzsko. The Department's finding on this point is supported by a preponderance of the evidence.

[¶ 28] In looking at each case as a whole, *Bohac* is not distinguishable from the present case, and, we conclude the Department's reliance on *Bohac* was well-founded. The Department's findings are supported by a preponderance of the evidence, that is a reasoning mind could have reasonably determined the Kryzsko trust was a support trust and not a discretionary trust.

[¶ 29] We affirm.

[¶ 30] DALE V. SANDSTROM, CAROL RONNING KAPSNER, WILLIAM A. NEUMANN, JJ., concur.

MARING, Justice, dissenting.

[¶ 31] I dissent from the majority opinion because I believe Alfred Kryzsko's intent can be determined from the face of the trust document and that the trust's language clearly shows he intended to create a discretionary trust, which may not be counted as an available asset in determining Peggy Kryzsko's eligibility for Medicaid benefits. I would, therefore, reverse.

[¶ 32] The ALJ concluded the trust contained elements of both a discretionary and a support trust, and thus that the trust document was ambiguous. Whether or not a trust is ambiguous is a question of law, fully reviewable by this Court on appeal. *Hecker*, 527 N.W.2d at 230. When a trust instrument is unambiguous, the intent of the settlor is determined from the language of the trust document itself. *Id.* I conclude no ambiguity exists because the trust document clearly indicates the settlor's intent to create a discretionary trust.

[¶ 33] The trust instrument states:

I devise Margaret Lee Kryzsko, a/k/a Peggy Kryszko's share of my estate to my Trustee to administer said share for the benefit of her by paying to or applying for her benefit so much of the income and/or principal of such share as the Trustee, *in her sole discretion*, thinks necessary or advisable to provide for the proper care, maintenance, support, and education of Margaret Lee Kryszko, a/k/a Peggy Kryzsko; provided, that the Trustee must make at least an annual distribution of the Trust income, or more frequent distribution as the Trustee, *in its sole discretion* deems necessary. . . .

(Emphasis added.) The above language shows the settlor expressly contemplated the trustee would exercise "sole discretion" over the assets of the trust. In addition, though the settlor required the trustee to make at least one annual distribution of the trust income, the settlor vested sole discretion with the trustee to determine whether additional distributions of income were "necessary or advisable." Finally, the settlor endowed the trust with such a small sum, $32,000, that it cannot reasonably be said that he intended the trust funds to be used for his daughter's primary support. The small size of a trust has been held by other courts to indicate absence of an intent to provide primary support. *See, e.g., Zeoli v. Comm'r of Soc.*

*Services,* 179 Conn. 83, 425 A.2d 553, 556 (1979); *Town of Randolph v. Roberts,* 346 Mass. 578, 195 N.E.2d 72, 74 (1964).

[¶ 34] The majority believes this trust is like the one we reviewed in *Bohac.* 424 N.W.2d 144. I disagree. The *Bohac* trust, unlike the trust before us in this case, did not clearly state that the trustee had "sole discretion" over the assets of the trust; rather it merely stated that the trustee was authorized to distribute the trust property as the trustee "deem[ed] necessary." This is a distinction with a difference. Alfred Kryzsko, not once, but twice, expressed his intent that the trustee exercise "sole discretion" over the assets of the trust. I believe this language conclusively indicates his intent that the trust be discretionary.

[¶ 35] Once discretion is so clearly vested in the trustee, the settlor's direction that the trustee may, in her sole discretion, use the assets of the trust for support related expenses does not change the trust's essential character and, therefore, does not convert the trust into a support trust. The trustee remains the sole judge of the propriety of applications for funds. *Chenot v. Bordeleau,* 561 A.2d 891, 894 (R.I.1989); *Hecker,* 527 N.W.2d at 230. Judicial control over the exercise of this discretion only arises if it can be shown the trustee abused his discretion by acting arbitrarily, dishonestly or improperly. *Chenot,* 561 A.2d at 894. Courts in a number of other states have reviewed trusts which vested discretion over the trust assets in the trustee and yet directed the trustee to use the trust assets for "support." These courts concluded such trusts were discretionary, and thus that the trust assets were not "available" for determining Medicaid eligibility or to pay medical costs. *See, e.g., Myers v. Kansas Dept. of Social and Rehabilitation Services,* 254 Kan. 467, 866 P.2d 1052 (1994); *Chenot,* 561 A.2d 891; *Lang v. Commonwealth Dept. of Pub. Welfare,* 515 Pa. 428, 528 A.2d 1335 (1987); *Tidrow v. Dir., Missouri Div. of Family Services* 688 S.W.2d 9 (Mo.Ct.App.1985);

*Oddo v. Blum,* 83 A.D.2d 868, 442 N.Y.S.2d 23 (N.Y.App.Div.1981); *First Nat'l Bank of Maryland v. Dept. of Health and Mental Hygiene,* 284 Md. 720, 399 A.2d 891 (1979). In addition, that the settlor directed the trustee to make an annual distribution of trust income does not prevent the determination that the settlor intended a discretionary trust. A number of courts have construed trust documents as creating discretionary trusts when these documents directed mandatory distribution of trust income, while reserving discretion over the distribution of the trust corpus with the trustee. *See, e.g., NCNB Nat'l Bank of Florida v. Shanaberger,* 616 So.2d 96, 97 (Fla.Dist.Ct.App.1993); *First Nat'l Bank of Maryland,* 399 A.2d at 893; *Oddo,* 83 A.D.2d at 868, 442 N.Y.S.2d 23; *McNeal v. Bonnel,* 412 S.W.2d 167 (Mo. 1967).

[¶ 36] Our Court has also held that a settlor's express statement granting sole discretion over trust assets to a trustee creates a discretionary trust, which is then an unavailable asset in the context of determining a beneficiary's Medicaid eligibility. In *Hecker,* as in this case, the settlor granted the trustee "sole discretion" to determine whether to distribute trust assets. 527 N.W.2d at 230. We concluded the settlor's direction that the trust funds be used for the beneficiary's special needs, which included items associated with support, did not limit the discretion vested in the trustee. *Id.* Further, we concluded the grant of "sole discretion" deprived the beneficiary of any ability to compel distribution of the trust assets so that the asset was not available to the beneficiary. *Id.* The discretion granting language in the *Hecker* trust and in the trust before us in this case is identical, and thus, the analysis we applied to that language in *Hecker* should apply in this case.

[¶ 37] It is true, as the majority notes, that the settlor in *Hecker* also expressly stated her intent that the trust be used to supplement any public assistance benefits her son might receive. 527 N.W.2d at 228.

However, a close reading of this Court's decision in *Hecker* reveals this expression of intent was not the determinative factor in that case; rather, a majority of this Court viewed that language as simply an additional expression of intent bolstering the conclusion that the trust was discretionary and not an available asset. *Id.* at 230–31.

[¶ 38] Other courts reviewing trusts like the one in *Hecker* have employed the same analysis we used in that case, looking foremost to the discretionary character of the trust and viewing the language indicating the trust was to supplement outside funds as additional evidence of the settlor's intent. *See, e.g., Matter of Leona Carlisle Trust,* 498 N.W.2d 260, 264–65 (Minn.Ct. App.1993); *Matter of Estate of Benjamin T. Sykes,* 131 Mich.App. 49, 345 N.W.2d 642, 644 (1983); *Zeoli,* 425 A.2d at 556. However, once a trust is determined to be discretionary, that additional language is not necessary to the determination that the trust is supplemental to public assistance. In *Lang,* the court concluded trustees of a discretionary trust could consider the availability of public assistance funds to the beneficiary when determining whether to distribute funds from the trust. 528 A.2d at 1343. The court based this conclusion on the testator's decision to create a discretionary, rather than a support trust, and the grant of complete discretion to the trustee. *Id.* Similarly, in *Shanaberger,* the court concluded trustees given "sole discretion" to determine whether invasion of the trust's principal was "necessary," properly looked to outside sources of income to make that determination. 616 So.2d at 97. Neither of the trusts in those two cases contained express language indicating an intent that the trust be supplementary.

[¶ 39] The majority opinion recognizes the settlor in this case granted sole discretion to the trustee. However, it adopts the ALJ's reasoning that the trustee's discretion was not "absolute and unfettered" because the settlor indicated an intent that the trustee use the funds for Peggy Kryzsko's "proper care, maintenance, support, and education." According to the ALJ, and now a majority of this Court, inclusion of the word "proper" created an enforceable standard against which to judge the trustee's exercise of discretion. The majority opinion cites in support of that reasoning only one case, *Martin v. Martin,* 54 Ohio St.2d 101, 374 N.E.2d 1384 (1978). I believe the majority's reliance on *Martin* is misplaced.

[¶ 40] First, though both *Martin* and this case involve trusts, the factual circumstances and public policies presented in *Martin* and in this case are dissimilar. In *Martin,* a trust beneficiary's ex-wife sought to compel the trustees of a discretionary trust to satisfy her ex-husband's alimony obligation with trust funds. Thus, the *Martin* case was essentially about an ex-wife's ability to enforce her judgment against a beneficiary's interest in a trust, which resulted in the conclusion that trust income was not reachable for the payment of alimony. The case now before us is about a disabled woman who depends on public assistance to meet her needs for food, shelter, clothing, and medical care at a subsistence level. The trust which benefits Peggy Kryzsko allows the trustee to provide her with funds for emergency situations should they arise, and also for supplemental needs such as prescription medicines which Kryzsko might not otherwise be able to afford. The dissimilarity between the facts and public policies presented by these two cases militates against adopting the inflexible standard established by *Martin.*

[¶ 41] Second, North Dakota has never before followed the analysis presented in *Martin* and this Court's decision in *Hecker* suggests it should not do so now. In *Hecker,* the trust indicated the trust funds should be used "as the Trustee in the Trustee's sole discretion may from time to time deem necessary or advisable for the *satisfaction* of the beneficiary's special needs." 527 N.W.2d at 228 (emphasis add-

ed). This Court did not conclude the beneficiary could compel the trustee to exercise discretion on the basis that his special needs were not being "satisfied," despite that this might be construed as a standard against which to judge the trustee's exercise of discretion as to expenditures for those special needs. Rather, our Court specifically stated:

> [a]lthough the Hecker trust's definition of special needs includes medical and dental expenses, clothing, and education, items associated with support of a beneficiary, this language *does not limit* the trustee's absolute discretionary power.

Id. at 230 (citing *Chenot*, 561 A.2d 891) (emphasis added). The dissent in *Hecker* also did not address this issue, rather it expressly recognized the trust was discretionary and argued an alternative outcome on other grounds. *Id.* at 237. Thus, our own precedent suggests we should not adopt the reasoning articulated in *Martin*.

[¶ 42] Finally, numerous courts in other states have examined trusts containing descriptive language identical or similar to that used by the settlor in this trust, yet these courts did not conclude such language altered the discretionary character of those trusts. *See, e.g., Tidrow,* 688 S.W.2d at 11 ("reasonable comfort"); *Estate of Sykes,* 345 N.W.2d at 643 ("proper care, support and welfare"); *Oddo,* 83 A.D.2d at 868, 442 N.Y.S.2d 23 ("necessary and proper for [beneficiary's] benefit"); *Town of Randolph,* 195 N.E.2d at 73 ("properly support"); *In re Wright's Will,* 12 Wis.2d 375, 107 N.W.2d 146, 149 (1961) ("necessary or proper for the care, maintenance or education"); *In re Watson's Will,* 286 A.D. 950, 142 N.Y.S.2d 731, 732 (1955) ("suitable care and support").

[¶ 43] Having concluded the ALJ erred in deciding the trust was ambiguous and thus was incorrect in her determination the trust is a support trust, I also conclude the ALJ erred in her conclusion that the corpus of Kryzsko's trust is an available asset for determining her eligibility for Medicaid. The requirement that an asset be "actually available" before it can be counted in determining eligibility for Medicaid is found in N.D.A.C. 75–02–02.1–25(2). Interpretation and application of an administrative regulation is a question of law, fully reviewable by this Court on appeal. *Americana Healthcare Ctr. v. North Dakota Dept. of Human Services,* 540 N.W.2d 151, 153 (N.D.1995). We accord some deference to an administrative agency's reasonable interpretation of its own regulations. *Id.*

[¶ 44] Actually available assets need not be "in hand," rather an asset is available if an applicant has a legal ability to obtain it. *Post v. Cass Cty. Social Services,* 556 N.W.2d 661, 664 (N.D.1996). Requiring actual availability of an asset prevents States from "conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes non-existent resources to recipients." *Id.* (quoting *Heckler v. Turner,* 470 U.S. 184, 200, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985)). Our interpretation of the actual availability standard "must be 'reasonable and humane in accordance with its manifest intent and purpose....'" *Id.* (quoting *Moffett v. Blum,* 74 A.D.2d 625, 424 N.Y.S.2d 923, 925 (1980)). In *Hecker,* a majority of this Court clearly articulated the importance of the policy underlying the requirement that only available assets be attributed to an individual in determining eligibility for Medicaid, stating that public policy militates against attributing tangential sources of income or resources to applicants for public assistance. 527 N.W.2d at 233–35.

[¶ 45] An asset to which an applicant has a legal entitlement is not necessarily unavailable simply because the applicant must sue to collect it. *Post,* 556 N.W.2d at 665. However, in determining whether an asset is actually available, the central issue is the applicant's "actual and practical ability to make an asset available as a matter of fact, not legal fiction." *Id.* at 664–65. Thus, in *Post,* this Court upheld an admin-

istrative determination that past-due amounts owed under a divorce decree were actually available to a disabled applicant who was legally entitled to the sums under the agreement and who had successfully sued to enforce the agreement in the past. *Id.* at 665–66. Thus, the applicant in *Post* had an "actual and practical ability" to make the sums due under the divorce decree available.

[¶ 46] This case is unlike *Post* because Kryzsko has no legal entitlement to the principal in the trust. The trust which benefits Peggy Kryzsko is a discretionary trust, such that she cannot compel the trustee to distribute the trust's principal. Thus, Kryzsko has no actual or practical ability to make the funds available. As was the case in *Hecker,* the trust principal is not an actually available asset under our regulation and public policy militates against attributing it as a resource upon which she may draw.

[¶ 47] I believe the ALJ committed an error of law in concluding the trust document contained an ambiguity despite language which clearly and expressly states the settlor's intent to vest "sole discretion" over the management and distribution of the trust assets to the trustee. Based upon that error, the ALJ incorrectly determined Alfred Kryzsko intended to create a support trust for his adult, disabled daughter, whom he had no legal duty to support, and in fact, had not seen in nine years. Deeming the corpus of this discretionary trust an available asset was a misapplication of this State's administrative regulations and clearly contradicts public policy articulated by this Court. This is not an instance in which an affluent individual is exploiting the social safety net put in place for the poor, elderly, and unfortunate. *Allen v. Wessman,* 542 N.W.2d 748, 753 (N.D.1996). Rather, this case implicates the public policy we announced in *Hecker* when we recognized that "our state's public policy places the burden on the State to support those [disabled] children once they reach adulthood," and quoted, with approval, the Wisconsin Supreme Court's statement that:

> [w]e know of no public policy to prohibit a person who is not liable for the support of a charity patient in a public institution to give to the patient extra comforts or luxuries or, at need, necessities which the institution does not furnish nor do we find a public policy to seize such gifts before the patient has received them.

527 N.W.2d at 235, 236 (citing *Wright's Will,* 12 Wis.2d 375, 107 N.W.2d 146, 149 (1961)). The majority opinion not only overturns *Hecker,* on the merits, but also disregards the public policy enunciated therein and returns us to the "notion of public assistance as charity" which is "anachronistic." *Hecker,* at 236.

[¶ 48] I conclude, given this Court's precedent and the settlor's clear intent, Kryzsko's trust is a discretionary trust and does not render her ineligible for Medicaid benefits. I would, therefore, reverse.

[¶ 49] Mary Muehlen Maring