[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Pamela D. Corcoran, appeals from the reconsideration decision of the department of social services ("the department"), which discontinued the medicaid benefits she received under the medical assistance to the aged, blind and disabled, and qualified medicare beneficiary programs. The plaintiff's appeal is taken pursuant to General Statutes §§ 17b-61 (b) and 4-183 of the Uniform Administrative Procedure Act ("UAPA").
The following facts are relevant to this appeal.
 1. The Department of Social Services provided benefits to the plaintiff under the Medical Assistance to the Aged, Blind and Disabled . . . and Qualified Medicare Beneficiary programs. On February 26, 2001, the agency discontinued those benefits effective March 31, 2001.
 2. The agency's reason for discontinuing the [plaintiffs] benefits was "The value of your assets is more than the amount we allow you to have."
 3. On November 3, 1987, the [plaintiffs] father signed his will. In his will, he left in trust one-third of his estate to his daughter, the [plaintiff].[1]
4. The [plaintiffs] father died on May 29, 1989. CT Page 10289
 5. In 1992 Probate Court appointed the [plaintiffs] sisters as trustees of the trust. They funded the trust in 1992.
 6. During the period up to December 31, 2000, the trust had total receipts of $854,307.95.
 7. Through December 31, 2000, the trustees distributed $150 to the [plaintiff]. On November 23, 1993, the trustees made to her a cash payment for holiday expenses. They also distributed $109,159.80 for items such as fees and taxes, and $711.34 to one trustee for expenses and $10,968.35 to the [plaintiffs] witness for legal fees.
8. The [plaintiff] is under 65 years of age.
 9. In February 2001, the [plaintiffs] income included $19 from Supplementary Security Income (SSI), $531 from Social Security, and $175.46 from employment.
 10. The [plaintiffs] receipt of SSI establishes her disability under the regulations of the Social Security Administration.
 11. The hearing record does not contain substantiation of the type of impairment that caused the Social Security Administration to find the [plaintiff] disabled.
 12. The hearing record does not contain substantiation of the claim that the [plaintiff] had an impairment or disability at the time her father signed his will on November 3, 1987.
 13. The [plaintiff] did not have a disabling impairment at the time her father signed his will on November 3, 1987.
 14. On November 28, 1989, the agency granted to the [plaintiff] financial and medical assistance under the Assistance to the Aged, Blind, and Disabled . . . program.
15. The agency discontinued the [plaintiffs] assistance effective March 31, 2001. CT Page 10290
 20. The agency first knew about the [plaintiffs] trust situation on February 23, 2001, when it received a telephone call from the Assistant Attorney General.
 21. After the agency discontinued the [plaintiffs] benefits, the trustees paid for the [plaintiffs] medications.
 22. The [plaintiffs] witness asked the trustees to provide the [plaintiff] with better living arrangements or to buy for her a condominium. The trustees allowed his secretary to inquire into new living arrangements for the [plaintiff].
 23. The [plaintiff] did not show with a preponderance of evidence that the income and corpus of the trust are not available for her use or benefit.
 24. The income and/or corpus of the trust are available for the [plaintiffs] use or benefit.
 25. The trustees can make or have made payments from the trust to or on behalf of the [plaintiff]. The corpus and income of the trust are an available asset to the [plaintiff].
 26. The trustees sought to have the Probate Court construe the trust to exclude the State of Connecticut from seeking from the trust any reimbursement for benefits that it provided to the [plaintiff].
* * *
 28. The [plaintiff] did not exhibit a willingness to cooperate with the agency in attempting to gain better access to the trust funds.
* * *
 30. The trust is not exempt from consideration as an asset in determining the [plaintiffs] ongoing eligibility for assistance from the Department of Social Services.
31. In the trust's corpus and income, the [plaintiff] CT Page 10291 has more assets than the maximum allowed for eligibility in the . . . programs.
(Return of Record ("ROR"), Volume I, Reconsideration Decision, pp. 12-14.)
Based on the above findings of fact, the hearing officer upheld the department's termination of the plaintiff's medicaid benefits, concluding that the trust assets available to the plaintiff exceeded the eligibility requirements of the programs. (ROR, Volume I, pp. 16-17.) Thereafter, the plaintiff timely appealed to this court. The court finds that the plaintiff is aggrieved by the discontinuance of her benefits.
At the outset, the court sets forth the standard of review applicable to appeals from administrative agencies. Under General Statutes §4-183 (j), the court's review is limited to whether the agency, in light of the evidence before it, acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in reaching its decision. See Burinskas v.Department of Social Services, 240 Conn. 141, 146-47 (1999); MacDermid,Inc. v. Department of Environmental Protection, 257 Conn. 128, 137
(2001).
Even as to questions of law, the court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. Therefore, the agency's legal conclusions must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. MacDermid, Inc. v. Department of Environmental Protection, supra,257 Conn. 137.
The plaintiff contends that the hearing officer erred in concluding that the plaintiff's trust was an available asset disqualifying her from medicaid. Rather, the plaintiff maintains that the trust as inaccessible because it was discretionary, supplementing, not reducing or replacing other state or private resources. Under the Uniform Policy Manual ("UPM") §§ 4015.05 and 4030.80, a trust, in some instances, may be deemed an inaccessible asset for purposes of medicaid eligibility. The leading case regarding inaccessibility is Zeoli v. Commissioner of Social Services,179 Conn. 83 (1979). In that case, a father created a will establishing a trust for his disabled daughters, where the sole asset of the trust was a savings account in the amount of $9,515.85. The question before the court was whether "the plaintiffs were eligible for title XIX assistance under the pertinent state and federal statutes and regulations. . . . The question of eligibility depends upon whether the savings account constitutes an asset of a spendthrift testamentary trust, whether that CT Page 10292 trust is intended for general or supplementary support, and whether the restrictions placed on the asset still permit it to be considered an available asset as this concept is defined by state and federal regulations for the purposes of granting title XIX payments." Id., 86.
The court concluded that the testator had created a spendthrift trust for "supplementary support" based on the following factors. First, the trust "clearly recognizes the obvious incapacity of his daughters to care for themselves." Zeoli v. Commissioner of Social Services, supra,179 Conn. 90. Second, the savings account that formed the trust was minimal, indicating that the father did not intend the trust as general support for his daughters. Id. At the time of the will's execution, the daughters were not receiving state assistance and the father could not have know if and how soon such benefits would become available. Id.
Third, the trustee was given the power to "discriminate totally against either of the beneficiaries by withholding all income and to disregard funds that might be available to either of the beneficiaries." Fourth, the "precatory language" of the trust directed the trustee to expend the income and principal of the trust to "those of my daughters who my Trustee believes would benefit most" from the trust income "after considering the income of the beneficiaries from other sources." (Emphasis added.) Zeoli v. Commissioner of Social Services, supra,179 Conn. 91.
The present case is distinguishable from Zeoli. Here, the plaintiff's father did not recognize the incapacity of his daughter in his will and the amount of trust assets far exceeds the small savings account inZeoli. The plaintiff is also the sole beneficiary of the present trust, while in Zeoli there were two beneficiaries competing for funds that the trustee might make available to them. Finally, the "precatory language" here directs the trustees to take into account "other income and assets" in making distributions, ROR, Volume I, p. 40, while in Zeoli, the trustee was to take into account "the income of the beneficiaries from other sources." See also Commonwealth Bank Trust v. DPW, 598 A.2d 1279,1282 (Pa. 1991) ("other income" does not mean public benefits).
Further, the plaintiff's trust allows the trustees to expend for the plaintiff's benefit "so much of the net income and principal of said Trust as the Trustees, in their sole discretion, shall deem proper for her health, support in reasonable comfort, best interests and welfare. . . ." (ROR, Volume I, p. 38.) This language falls under the "clear" rule in this state that even if a spendthrift trust was created, "the trustee's discretion was not intended to be absolute. . . . Had the testator so intended, he could have so provided in explicit terms." (Citations omitted.) Kolodney v. Kolodney, 6 Conn. App. 118, 122 (1986). CT Page 10293
The plaintiff contends that the decision on availability is governed byBridgeport v. Reilly, 133 Conn. 31 (1946). In Reilly, the Supreme Court affirmed the trial court decision not to allow the city of Bridgeport, a creditor, access to a trust providing for the "comfortable support" of a relative. The basis of this decision, however, was that when the testator executed the will, he knew that his relative was in a state institution and that the state was furnishing him appropriate support. Id., 38. "It is impossible to escape the conclusion that [the testator], by making the provision he did for [the relative's] support, was thinking of the use of the fund to supplement the care and support which the state was furnishing [the relative] while he was an inmate of the hospital, or to provide for him elsewhere should he be in need of support after he had left it but before he so far recovered his health that the fund should be turned over to him." Id., 39. In contrast, the testimony by the plaintiff in this case indicates that she was hospitalized once while her parents were alive and had possibly lived in subsidized housing. (ROR, Volume I, pp. 248-49.)
The plaintiff further contends that the hearing officer erred in disallowing an affidavit of the attorney who drafted her father's will stating that he intended to create a supplemental trust and expected the plaintiff to be supported by state benefits. (ROR, Volume I, pp. 193-94.) The plaintiff relies on Erickson v. Erickson, 246 Conn. 359 (1998) for the proposition that extrinsic evidence may be produced to clarify the intent of the testator.
Erickson v. Erickson, supra, 246 Conn. 359, however, affirms the general rule that "extrinsic evidence is not admissible to prove an intention not expressed in the will itself." Id., 372. The trial court had erred, however, in not allowing the plaintiff to prove that "a scrivener's error induced the decedent to execute a will" not in keeping with a statutory provision on revocation. Id., 373; see also Erickson v.Estate of Erickson, Superior Court, judicial district of New Haven at New Haven, Docket No. 387780 (November 4, 1999, Meadow, J.) (the trial court ruling after the Supreme Court remand in Erickson.) Here, the proposed evidence was not that the attorney had given the client inaccurate advice, but an amplification by the attorney on what the plaintiff's father intended when the will was drafted. This is outside of the holding in Erickson. See also Perkins v. Corkey, 147 Conn. 248, 252 (1960) ("Parole evidence is not admissible to prove an actual intent, as a state of mind, which contradicts or alters the intent expressed in the will by the language used."); Owens v. Doyle, 152 Conn. 199, 208 (1964) (parol evidence of the intention of the testator to vary terms of will).[2]
The court finds persuasive a case from North Dakota, Kryzsko v. RamseyCT Page 10294County Social Services, 607 N.W.2d 237 (N.D. 2000). In that case, a trust was established by a father to benefit his mentally-disabled daughter. The trustee was given the authority to expend "so much of the income and/or principal of such share as the Trustee, in her sole discretion, thinks necessary or advisable to provide for the proper care, maintenance, support, and education" of his daughter. Id., 240. The daughter was denied medicaid benefits because her available assets exceed the maximum allowed. The court found that the trust was an accessible asset, stating:
 We agree with the ALJ that the trust does not provide the trustee with unfettered discretion. First, even the use of terms like "absolute" or "uncontrolled" do not give the trustee unlimited discretion. . . . Second, of considerable importance in determining the amount of discretion is whether there is any standard by which the trustee's conduct can be judged. . . . Here, there is a standard: the "proper care, maintenance, support, and education" of Kryzsko.
Id., 241-42. The court continued, quoting from George G. Bogert, Trustsand Trustees § 228 (1981):
[A] discretionary trust as one where the:
 trustee shall have absolute and uncontrolled discretion whether to pay or apply trust income or principal to or for the benefit of a named beneficiary, without fixing any standard or guide which the trustee is to consider, and that income which the trustee does not elect to use for the beneficiary shall be accumulated or paid to another or to a class of other persons.
(Emphasis in original.) Id., 242.
A discretionary trust, according to Bogert, "must be distinguished from trusts where the discretion of the trustee pertains only to the time or manner of the payments, or to the size of the payments needed to achieve a certain purpose, for example, to support the beneficiary." (Emphasis in original.) Kryzsko v. Ramsey County Social Services, supra, 607 N.W.2d 242. The court concluded that the Kryzsko trust was a "support trust and not a discretionary trust." The trust was an available asset as there was "no indication that the trustor intended the trust should not be used to provide primary support or maintenance for Ms. Kryzsko." Id., 244.[3]
CT Page 10295 This court similarly concludes that the hearing officer correctly construed the language of the trust and applied the facts of record to determine that the plaintiff was the beneficiary of a support trust and not a discretionary trust.
The second issue in this case arises from a petition under General Statutes § 45a-98 (a)(4) to construe the trust brought by the trustees to the Stratford Probate Court. (ROR, Volume I, pp. 116-19.) At the end of this process, the Probate Court concluded that the trust at issue here was a "special needs, discretionary trust," unavailable to the state for payment of the plaintiff's care and support; that the trustees had the authority to consider sources of funds such as state payments, before utilizing the assets of the trust for the plaintiff's care; that the trust assets are not available to the claims of the state for past or future care, except as authorized by the trustees in their sound discretion; the state is bound by a Probate Court order of March 27, 2001 approving the trustee's periodic account; and that "although the Court lacks the power to order any Department of the State of Connecticut to reinstate benefits to a party before this Court, it respectfully requests that the State do so in this case, as recommended by the Committee [appointed by the Probate Court]." (See Complaint, Exhibit D.)
The plaintiff claims that the hearing officer, who closed the hearing without considering the order of the Probate Court, erred in not recognizing the Probate Court's construction of the trust. A state Probate Court may not, however, consider whether the plaintiff is eligible for benefits under programs administered by the department or whether the department correctly construed the nature of the plaintiff's trust. The Probate Court concedes this in its order.[4] See also In reMichaela Lee R., 253 Conn. 570, 580 (2000) (probate court cannot amend a birth certificate; it has jurisdiction "only when the facts exist on which the legislature has conditioned the exercise of their power.")
In addition, the trustees have received an interpretation from the Probate Court that states that the department may not approach the trustees for reimbursement. The trust, according to the Probate Court, is a "special needs, discretionary trust." These findings by the Probate Court do not resolve whether under the statutes and regulations administered by the department, the trust is an inaccessible asset. Further, the key issue of the testator's knowledge of the plaintiff's disability was made a part of the record before the Probate Court when one of the trustee-sisters described a history of the plaintiff's disabilities both before and after her father died. These details were not presented by the plaintiff's attorney at the hearing before the department. CT Page 10296
The court concludes that the department did not act unreasonably, arbitrarily, illegally or in abuse of its discretion. Accordingly, the plaintiff's appeal is dismissed.
Henry S. Cohn, Judge