**Marcia STRAND, Guardian of David M. Strand, Ward, Appellant,**

v.

**Jessie K. RASMUSSEN, Director of Iowa Department of Human Services, Appellee.**

No. 01–0146.

Supreme Court of Iowa.

July 17, 2002.

John W. Kocourek, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Daniel W. Hart, Assistant Attorney General, for appellee.

CADY, Justice.

The primary issue we face in this appeal is whether an irrevocable trust created with funds received from the settlement of a malpractice action brought on behalf of a mentally retarded individual by his conservator-parents is properly included as an asset under Iowa Administrative Code rule 441–75.9(1) (1997) for the purpose of determining eligibility for state Medicaid benefits. The Department of Human Services (Department) found the trust was an available resource and the amount of the trust exceeded the applicable resource limits proscribed by federal Medicaid law for determining whether an applicant was sufficiently needy to be entitled to Medicaid benefits by the department. On judicial review, the district court upheld the denial of benefits. On our review, we find the Department correctly applied federal and state law in concluding the trust in this case constituted a prohibited Medicaid qualifying trust. We therefore affirm the decision to cancel Medicaid benefits to David M. Strand.

## I. Background Facts and Proceedings.

David M. Strand (David Jr.) was born to David L. (David Sr.) and Marcia L. Strand on April 8, 1976. David Jr. sustained extensive brain damage during the delivery process. Consequently, he has been profoundly mentally retarded since birth. David Sr. and Marcia filed a malpractice action against the doctor who delivered David Jr. and the hospital. The lawsuit was eventually settled, and a conservatorship was created to manage the settlement funds. David Sr. and Marcia were appointed as conservators. In 1982 David Sr. and Marcia entered into a trust agreement with First Northwestern Trust Co. of Nebraska to manage the settlement funds. Pursuant to court order, the conservatorship reimbursed David Sr. and Marcia $14,668.63 for medical expenses they incurred in connection with David Jr.'s permanent disability after his birth.

Under the trust agreement, the bank was named trustee. David Jr. was named beneficiary. David Sr. and Marcia were named grantors and residuary beneficiaries. The trust agreement granted the trustee "sole discretion" to distribute as much of the principal as the trustee believed necessary for David Jr.'s benefit. The only restriction imposed on the trustee's discretion was that written court approval be obtained prior to expending any funds from the trust.

In 1985 the trust was amended to permit the trustee to distribute up to $2000 each year to David Jr. without court approval. The trustee had to obtain prior court approval if the trustee desired to distribute more than $2000 in any year. This sum was in addition to other payments the trustee was specifically authorized to distribute, such as health insurance policy premiums for David Jr. Furthermore, the trust was amended to authorize the trustee to reimburse David Sr. and Marcia $1658.80 for an Odessey bicycle they purchased for David Jr. In the years that followed, additional disbursements were made for a variety of uses. The purchases ranged from the construction of a swimming pool for the Strands' home for $11,435.70 on May 24, 1994, to family vacations, furniture, clothing, toys, and other household items. Trust funds were also used for the personal care and support of David Jr.

David Jr. has continuously lived with his parents in the family home since birth. Instead of placing David Jr. in a residential care facility, Marcia has lovingly been his primary caregiver. The Iowa Foundation for Medical Care has certified David Jr. to be in need of long-term care in an intermediate care facility for the mentally retarded (ICF/MR).

Due to his disability, David Jr. receives social security income (SSI). On December 11, 1997, Marcia applied, on behalf of David Jr., for state supplemental assistance under the "Medicaid waiver services" provisions. The department provides Medicaid waiver services to disabled individuals who wish to receive care in their own home instead of in a medical institution. *See id.* r. 441—83 (preamble). These services are referred to as "waiver services" because only those individuals who have received a waiver of the federal requirement of residing in a medical institution are entitled to Medicaid benefits. *Id.* Moreover, an individual whose primary disability is mental retardation (MR) must satisfy certain eligibility criteria, including financial resource limits delineated under federal law, and demonstrate a need for one of the home and community-based services (HCBS) provided under the state Medicaid MR waiver program. *Id.* r. 441–83.61 (1998).

In the application for waiver services, Marcia revealed the irrevocable trust as a resource. The Department initially approved Marcia's application, and David Jr. began receiving Medicaid benefits. The Department assumed the trust funds did not exceed the applicable federal resource limits of $2000 for categorically needy programs such as MR waiver services.[1] 20 C.F.R. § 416.1205(c) (1985) (resource limi-

---

1. Under Iowa's medical assistance plan for the needy, "an individual whose income exceeds federally prescribed limits is barred from receiving benefits." *Torner by Torner v. State*, 399 N.W.2d 381, 383–84 (Iowa 1987) (citing Iowa Code section 249A.3(5)). If Iowa did not follow federal guidelines, it would risk losing full federal reimbursement for pay- ments made under its state Medicaid plan. For example, if state law permitted the payment of benefits to an individual who would not similarly be entitled to benefits under the federal Medicaid statute, the state would be responsible for compensating all of the program benefits received by that particular individual. *See id.* at 384.

tations). At the time of the Department's review, the trust principal totaled $304,702.52. Upon learning Marcia planned to build a HCBS home with trust funds to accommodate David Jr.'s disability, however, the Department further investigated the trust agreement. The Department subsequently determined the entire trust corpus was a resource that could be made available to David Jr. at any time by the trustee. Because $304,702.52 far exceeded the eligibility resource limits of $2000, the Department deemed David Jr. ineligible for state Medicaid benefits. The Department then canceled David Jr.'s Medicaid benefits for MR waiver services, effective March 1, 1999.[2]

Marcia timely appealed the Department's decision. A hearing was later held before an administrative law judge (ALJ). The ALJ held the irrevocable trust established for David Jr. constituted a Medicaid qualifying trust (MQT) under Iowa Administrative Code rule 441–75.9(1) (1997). Like the Department, the ALJ found the trust agreement provided unfettered discretion to the trustee, resulting in the availability of the entire trust corpus to David Jr. The ALJ also concluded David Jr.'s trust was not exempt from treatment as a MQT. *See id.* ("Trusts ... established prior to April 7, 1986, solely for the benefit of a mentally retarded person who resides in an intermediate care facility for the mentally retarded, are exempt."). The ALJ rejected Marcia's contention that her home was the functional equivalent of an ICF/MR under the MR waiver services program, thereby entitling her to exempt status. Lastly, the ALJ preserved Marcia's argument that rule 441–75.9(1) is unconstitutional because it unfairly treats mentally retarded persons residing in an ICF/MR differently from those living at home.[3]

Marcia's subsequent request for an exception to the state Medicaid regulations pursuant to rule 441–75.23(5)(*d*) was also denied by the ALJ. *See id. r.* 441–75.23(5)(*d*) (An exception exists to the medical assistance eligibility rules if "[t]he denial of eligibility would work an undue hardship as set forth in 75.15(3)."). She then filed a petition for judicial review. In addition to the two issues ruled on by the ALJ, Marcia raised several new issues. For the first time, she claimed the Department was bound by its initial determination that the trust was not a MQT. Additionally, Marcia developed her constitutional challenge in greater detail, specifically raising an Equal Protection Clause violation.

The district court denied the judicial review petition. It found the ALJ correctly applied federal and state law in concluding the trust established with the medical malpractice settlement funds constituted a MQT. Additionally, the court agreed the ICF/MR exemption of rule 441–75.9(1) did not apply. The district court did not ad-

---

**2.** David Jr. was also denied benefits under the general medically needy program because of excess resources. Iowa Admin. Code r. 441–75.1(35)(*b*)(1). The financial resource limit for a household applying for medically needy benefits is $10,000. However, because the Strands do not specifically raise the issue of entitlement to benefits under the medically needy program in this appeal, we need not address this portion of the Department's decision.

**3.** In challenging the constitutionality of the rule at the hearing before the ALJ, it appears Marcia was attempting to advance an equal protection violation argument. Specifically, Marcia's attorney told the ALJ he believed "there at least arguably could be a question of ... whether or not Mr. Strand is being treated equally under the privileges and immunity clause of the United States Constitution between himself and those individuals residing in an [ICF]."

dress the constitutional or estoppel arguments, and Marcia did not request an enlargement of the ruling.

Marcia appeals. She contends the district court erred in finding rule 441–75.9(1) applied to the trust in this case, and in failing to grant an exemption. Although these issues were raised before and decided by the ALJ and district court, the Department contends Marcia is now advancing arguments different from those raised in the underlying proceedings to support the two issues. Marcia again raises the estoppel and constitutional challenges set forth in the petition for judicial review. However, she is now alleging a Due Process Clause violation as well as an Equal Protection Clause infraction. Because these latter issues were not properly presented below, the Department asserts, they are not preserved for appellate review.

## II. Standard of Review.

We review a decision by a district court on a petition for judicial review of an individual's eligibility for Medicaid benefits for errors at law. *See TLC Home Health Care, L.L.C. v. Iowa Dep't of Human Servs.*, 638 N.W.2d 708, 711 (Iowa 2002); *Ahrendsen v. Iowa Dep't of Human Servs.*, 613 N.W.2d 674, 676 (Iowa 2000). We will uphold the district court's decision if we find the court properly applied the law. *TLC Home Health Care, L.L.C.*, 638 N.W.2d at 710; *Ahrendsen*, 613 N.W.2d at 676. In determining whether "our conclusions [are] align[ed] with those of the district court," we look to the standards of agency review found in Iowa Code section 17A.19(8) (1999). *Al–Khattat v. Eng'g & Land Surveying Examining Bd.*, 644 N.W.2d 18, 23 (Iowa 2002). Thus, we will affirm the department's action as long as it is supported by substantial evidence, and does not involve an arbitrary, unreason-

able, or capricious decision. *Id.* Lastly, we accord substantial deference to the interpretation of regulations within the agency's expertise. *Id.; TLC Home Health Care, L.L.C.*, 638 N.W.2d at 711. This deference is particularly warranted when we are called upon to construe the Medicaid act. *Ahern v. Thomas*, 248 Conn. 708, 733 A.2d 756, 765 (1999).

## III. Preservation of Error.

We must first address the Department's contention that Marcia failed to preserve error on some of the issues now raised on appeal. It is a well-recognized principle of appellate review that "issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut III*, 641 N.W.2d 532, 537 (Iowa 2002). Additionally, an issue must generally be presented to the agency to satisfy preservation requirements. *Al–Khattat*, 644 N.W.2d at 22–23 n. 2; *see Ahrendsen*, 613 N.W.2d at 676 ("This court's review is limited to questions considered by the agency.").

We find the principal issues in this case, whether the trust was a MQT and whether the trust was exempt due to David Jr.'s residence in the functional equivalent of an ICF/MR, were properly preserved for our review. Both of these issues were the foundation of the litigation and were presented to, and addressed by, the administrative agency and the district court.

On the other hand, the estoppel and unconstitutional challenges are not properly before us. Although Marcia raised an estoppel argument in the petition for judicial review, this issue was not raised before the agency or addressed by the district court in its ruling. Likewise, Marcia raised the equal protection issue before the agency and district court, but the district court did not address the issue

in its ruling. Additionally, this appeal marks the first time Marcia raised a Due Process Clause violation. Because the district court failed to rule on the estoppel and constitutional challenges, Marcia should have requested the district court enlarge its factual findings and legal conclusions. *Al–Khattat,* 644 N.W.2d at 22–23 n. 2; *Meier,* 641 N.W.2d at 537. The estoppel argument, as well as the equal protection and due process issues, have not been preserved.

## IV. Eligibility for Medicaid Benefits.

The eligibility of an applicant for public assistance benefits who is the beneficiary of an irrevocable trust has been debated in the law for some time. The source of the dispute relates to the needs-based test for Medicaid eligibility, which means Medicaid coverage is denied if an applicant has assets that exceed a certain level. *Ronney v. Dep't of Soc. Servs.,* 210 Mich.App. 312, 532 N.W.2d 910, 912 (1995). Prior to 1986, an irrevocable trust was not considered to be an asset in determining whether an applicant was sufficiently needy to qualify for Medicaid benefits. *See id.* Yet, Congress and the states participating in the joint federal-state Medicaid program[4] began to realize that many individuals with irrevocable trusts that otherwise would have made them ineligible for public assistance were receiving Medicaid benefits. They learned that many individuals confronted with escalating health care expenses and a corresponding depletion of personal assets were taking advantage of the trust gap in the Medicaid act by establishing trust funds to shield their own assets, commonly referred to as "self-settled trusts." *Cohen v. Comm'r of Div. of Med. Assistance,* 423 Mass. 399, 668 N.E.2d 769,

771 (1996). As a result, these individuals were permitted "to have [their] cake and eat it too," at the expense of those who were truly unable to financially care for themselves. *Id.* at 772; *see Lebow v. Comm'r of Div. of Med. Assistance,* 433 Mass. 171, 740 N.E.2d 978, 980 (2001) (referencing espoused purpose of 1986 federal Medicaid amendments, as stated by the founding members of the bill, to stop " 'affluent individuals … [from] diverting scarce Federal and State resources from *low-income* elderly and *disabled individuals* ' " (emphasis added) (citation omitted)); *Allen v. Wessman,* 542 N.W.2d 748, 753–54 (N.D.1996) (discussing overriding purpose of the Medicaid amendments).

In 1986, Congress attempted to close the "loophole" in the federal Medicaid act by promulgating provisions prohibiting individuals with considerable means from utilizing the law of trusts to secure eligibility for public welfare benefits. *Lebow,* 740 N.E.2d at 980; *Cohen,* 668 N.E.2d at 772; *Cook v. Dep't of Soc. Servs.,* 225 Mich.App. 318, 570 N.W.2d 684, 685 (1997); *Ronney,* 532 N.W.2d at 913–14; *Allen,* 542 N.W.2d at 754; 570 N.W.2d at 685; *see Ramey v. Reinertson,* 268 F.3d 955, 961 (10th Cir. 2001). The amendment created an exception to general trust law by including certain trusts with an individual's assets for the purpose of determining whether an applicant's resource level exceeded the maximum limits. *Cook,* 570 N.W.2d at 685; *Ronney,* 532 N.W.2d at 912. These prohibitive trusts were called Medicaid qualifying trusts. The statute defined these trusts, in pertinent part, as follows:

> [A] "medicaid qualifying trust" is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the

---

4. For a detailed overview of the general originations of the federal-state cooperative Medicaid program, see *TLC Home Health Care,* *L.L.C.,* 638 N.W.2d at 711–12, and *Ahrendsen,* 613 N.W.2d at 676–77.

individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual.

42 U.S.C. § 1396a(k)(2) (1986). However, the amendment explicitly exempted trusts established before April 7, 1986 "solely for the benefit of a mentally retarded individual who resides in an intermediate care facility for the mentally retarded." *Martin v. Kansas Dep't of Soc. & Rehab. Servs.*, 26 Kan.App.2d 511, 988 P.2d 1217, 1219 (1999) (citing Pub.L. No. 99–509, § 9435(c), 100 Stat.2070); *accord Ronney*, 532 N.W.2d at 913. The underlying purpose of the amendment was to preserve the fiscal integrity of the Medicaid program by ensuring those receiving benefits were in fact impoverished and were not instead shielding assets that should be used to purchase health care services. *See Ronney*, 532 N.W.2d at 913–14; *Allen*, 542 N.W.2d at 754.

Notwithstanding, Congress repealed section 1396a(k) in 1993 and substituted even tighter restrictions by enacting section 1396p(d). *See* 42 U.S.C. § 1396p(d) (1993); *Ramey*, 268 F.3d at 961; *Cook*, 570 N.W.2d at 685. The 1993 amendments expanded the types of trusts that could be considered to preclude applicants from Medicaid eligibility.[5] Furthermore, section 1396p(d) clarified the definition of an "individual" under the Medicaid act when determining who established a trust. That subsection provided, in pertinent part:

(2)(A) For purposes of this subsection, an individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will:

(i) The individual.

(ii) The individual's spouse.

(iii) *A person,* including a court or administrative body, *with legal authority to act in place of or on behalf of the individual* or the individual's spouse.

42 U.S.C. § 1396p(d)(2)(A) (emphasis added). Thus, if a conservator or other representative of an individual establishes a trust with an individual's assets, the individual is considered to have formed the trust. *See id.* § 1396p(d)(2)(A)(iii). Lastly, Congress specifically stated this amendment to the federal Medicaid provisions only applies to trusts established after the effective date of the enactment, i.e., August 10, 1993. *Cohen*, 668 N.E.2d at 773 (citing Pub.L. No. 103–66, § 13611(e)(2)(C), 107 Stat. 627 (1993)).

Against this backdrop, we turn to consider our state law governing Medicaid benefits, and its relationship to the federal provisions. Iowa's medical assistance act is found in Iowa Code chapter 249A. Section 249A.4 directs the department director to promulgate rules and policies implementing the medical assistance act. *Torner*, 399 N.W.2d at 384. In accordance with this mandate, the director established rules governing an individual's eligibility for Medicaid benefits. *See id.*

The Iowa administrative rules essentially follow the 1986 and 1993 federal amend-

---

**5.** In particular, the new restrictions provided:
(B) In the case of an irrevocable trust—
(i) *if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual,* the portion of the corpus from which, or the

income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual . . . .
42 U.S.C. § 1396p(d)(3)(B)(i) (emphasis added).

ments. Iowa Administrative Code rule 441–75.9(1) embodies the 1986 definition of MQT, and also delineates the exemption for those trusts established before April 7, 1986 for mentally retarded persons residing in an ICF/MR. However, rule 441–75.9(1) expressly limits the application of this rule to trusts established on or before August 10, 1993. The 1993 amendment is found in Iowa Administrative Code rule 441–75.24 and only applies to trusts established after August 10, 1993. The provisions of rule 441–75.24 are nearly identical to those of section 1396p(d). Because these provisions apply only to trusts created after August 10, 1993, we confine our review to consideration of the 1986 federal amendment and rule 441–75.9.

■ Although Marcia concedes rule 441–75.24 does not apply to this case, she claims rule 441–75.9 does not apply either because the 1986 amendment it is based upon was repealed when Congress enacted section 1396p(d). In essence, Marcia contends the repeal by Congress in 1993 and the reenactment of a new statute means there is no statute governing trusts created prior to 1993, which renders the Iowa regulation invalid as inconsistent with the federal requirements.

■ We have previously held that "[t]he simultaneous repeal and reenactment of all or part of a legislative act" is a completely different situation than a mere repeal. *State ex rel. Iowa Air Pollution Control Comm'n v. City of Winterset*, 219 N.W.2d 549, 551 (Iowa 1974). In fact,

"Where a statute is repealed by a new statute which relates to the same subject matter, and which re-enacts substantially the provisions of the earlier statute, and the repeal and re-enactment occur simultaneously, the provisions of the original statute which are re-enacted in the new statute are not interrupted in their operation by the so-called repeal;

they are regarded as having been continuously in force from the date they were originally enacted."

*Id.* (quotation omitted). Applying this principle, we conclude the 1986 amendment remains in effect for trusts created before August 10, 1993, and our statutory law governing such trusts is therefore not inconsistent with federal law.

■ The overwhelming majority of states that have considered this issue have reached the same result. *See, e.g., Ramey*, 268 F.3d at 961–62 ("Congress intended that § 1396a(k) be applied to all trusts established on or before August 10, 1993 . . . ."); *Ahern*, 733 A.2d at 765–66 ("[T]his case does not involve . . . the trust treatment provisions set forth at 42 U.S.C. § 1396p(d) of the medicaid act," but the provisions of 42 U.S.C. [§ ] 1396a(k)(1).); *Williams v. Kansas Dep't of Soc. & Rehab. Servs.*, 258 Kan. 161, 899 P.2d 452, 456 (1995) ("Th[e] statute was repealed in 1993, but it applies to this case."); *Martin*, 988 P.2d at 1219 ("42 U.S.C. § 1396a(k) (1988) applies to trusts established on or before the enactment of the [1993 amendment]."); *Cohen*, 668 N.E.2d at 773 n. 14 ("[T]he evident intention of Congress in 1993 was to supersede the 1986 MQT statute for trusts created after August 10, 1993, by a more stringent provision, *not to loosen eligibility requirements for previous trusts*." (Emphasis added.)); *Cook*, 570 N.W.2d at 685 ("Congress intended that the Medicaid laws established in 1986 . . . are [to continue] to be applied to all trusts established on or before August 10, 1993 . . . ."). Similarly, the Department of Health and Human Services, the federal agency charged with administering the Medicaid program, has indicated the 1986 amendment still applies to trusts created prior to August 10, 1993. *See Ramey*, 268 F.3d at 962 (referencing Health Care Financing Administration, Department of

Health and Human Services, State Medicaid Manual § 3257 (Nov.1995)); *Cook,* 570 N.W.2d at 686 (same). Moreover, a contrary holding would contravene the purpose of the MQT law to prevent individuals with sufficient funds from becoming eligible for Medicaid benefits by hiding their resources in self-settled trusts. Clearly, Congress could not have intended to eliminate the eligibility requirements for trusts created before 1993 when it enacted section 1396p(d), *Ramey,* 268 F.3d at 961; *Martin,* 988 P.2d at 1219; *Cohen,* 668 N.E.2d at 773 n. 14; *Cook,* 570 N.W.2d at 686, especially when the 1993 amendments tightened, rather than loosened, the loophole. If we found otherwise, we would be interpreting the statute to render an absurd result. Consequently, the only rational conclusion is that Congress intended the 1986 MQT provisions to continue to apply to pre-August 10, 1993 trusts. *Cook,* 570 N.W.2d at 686.[6]

■ Having found rule 441–75.9 applies to this case, we must next determine whether the trust constitutes a MQT that would render David Jr. ineligible for Medicaid benefits. Marcia argues the trust in this case was not a MQT because it was established by them, not David Jr. A MQT is a trust established by a person under which the person is the beneficiary of payments from the trust. Iowa Admin. Code r. 441–75.9(1). Yet, the person who furnishes the consideration for the trust is deemed to have established the trust, even if the trust was actually created, in form, by someone else. *Forsyth v. Rowe,* 226 Conn. 818, 629 A.2d 379, 384 (1993);

**6.** Notwithstanding, Marcia contends the 1986 law does not apply to the trust in this case because Congress did not intend the law to apply retroactively or to trusts created solely for the benefit of disabled children. We find both arguments to be without merit. In promulgating the 1986 amendment, Congress specifically stated that the MQT provisions were to be given retroactive effect. *Cohen,* 668 N.E.2d at 772 n. 8 (citing report of Committee on Energy and Commerce, H.R.Rep. No. 265, 99th Cong., 1st Sess., pt. 1, at 73 (1985)). Furthermore, we do not believe Congress intended to create a general blanket exemption for trusts created for disabled children's benefit when it enacted the 1986 amendment. To the contrary, Congress limited the exemption to trusts created for mentally retarded children residing in an ICF/MR. Considering the narrow limits of this exemption, we cannot conclude Congress intended to protect all mentally retarded children. *See Ronney,* 532 N.W.2d at 913 (Congress carved a narrow exemption, impliedly indicating its intent to include all other trusts within the MQT provisions.). If Congress had so intended, it could have easily said so. *See Greenwood Manor v. Iowa Dep't of Pub. Health,* 641 N.W.2d 823, 835 (Iowa 2002).

We also reject Marcia's claim that the trust should not be categorized as a MQT because it was not created with the intention to qualify an otherwise ineligible person for Medicaid benefits. As noted, the overriding purpose of the 1986 and 1993 amendments was to prevent otherwise ineligible individuals from creating self-settled trusts to satisfy federal resource limits. Yet, the actual intent of the settler in establishing the trust is irrelevant to the Department's analysis of an application for benefits. Iowa Admin. Code r. 441–75.24(1)(*d*)(1) ("This rule shall apply without regard to: (1) The purposes for which a trust is established."); *accord Lebow,* 740 N.E.2d at 980 ("The statute applies ... whether the trust was established for a purpose other than to qualify for Medicaid benefits."). Furthermore, we find the trust was arguably created for the purpose of preserving David Jr.'s eligibility for public assistance. In Marcia's testimony before the ALJ, she stated she believed David Jr.'s eligibility status would remain intact despite the establishment of the trust. The petition for judicial review also specifically provided that "it was the intention of the creators of said trust to provide the maximum benefits ... which would not preclude his qualifying for Social Security Disability benefits, Medicaid benefits, the Mentally Retarded Waiver programs ...." Lastly, Marcia's reliance on section 1396p(c)(2)(C) in forming this argument is misplaced. This section regards the transfer of assets for less than fair market value, which is not involved in this case.

*Williams,* 899 P.2d at 456; *Masterson v. Dep't of Soc. Servs.,* 969 S.W.2d 746, 748 n. 4 (Mo.1998); *In re Lennon,* 294 N.J.Super. 303, 683 A.2d 239, 241 (Ch.Div.1996). Clearly, the term "person" necessarily includes "a person acting as an individual's legal representative where the individual is incapable of acting on his or her own." *Williams,* 899 P.2d at 456; *accord Ronney,* 532 N.W.2d at 913. Thus, a trust established by an individual beneficiary's legal conservator on behalf of the individual with the individual's assets is deemed the individual's trust. *See Forsyth,* 629 A.2d at 384–85; *Ronney,* 532 N.W.2d at 913; *see also* 42 U.S.C. § 1396p(d)(2)(A)(iii) (stating an individual is considered to have established a trust if a legal representative acting on behalf of the individual funded the trust with the individual's assets); Iowa Admin. Code r. 441–75.24(1)(*a*) (same). A contrary interpretation would create an absurd result by permitting guardians and others acting on behalf of an individual to do what the law prevents the actual individual from doing himself or herself. *In re Lennon,* 683 A.2d at 242; *see Forsyth,* 629 A.2d at 385 (recognizing the potential unfairness of this position); *Williams,* 899 P.2d at 457 (same); *Ronney,* 532 N.W.2d at 914 (same).

We conclude the trust was established by David Jr. and therefore constitutes a MQT. *See Forsyth,* 629 A.2d at 384; *Williams,* 899 P.2d at 456; *Ronney,* 532 N.W.2d at 913. As David Jr.'s conservator, Marcia was acting on behalf of David Jr. in creating the trust for his benefit. Although Marcia argues otherwise, the trust was funded solely with proceeds from the settlement of David Jr.'s medical malpractice claim. David Sr. and Marcia were reimbursed by the conservatorship for their medical expenses, but the remaining funds invested in the trust belonged entirely to David Jr. Consequently, substantial evidence supports the ALJ's finding that the trust was created with David Jr.'s assets.

However, our analysis does not end here. We must next determine the amount of funds available to David Jr. under the trust agreement. The department only considers resources in excess of the $2000 federal eligibility requirement that are "available" to an applicant under the MQT when assessing an applicant's eligibility for Medicaid benefits. Iowa Admin. Code r. 441–75.9(2); *see Williams,* 899 P.2d at 455; *Martin,* 988 P.2d at 1219.

■ Both trust income and principal are "available" resources. Iowa Admin. Code r. 441–75.9(2). In evaluating the availability of the principal, the department considers "the maximum amount that *may be permitted* under the terms of the trust *assuming the full exercise of discretion by the trustee ....*" *Id.* r. 441–75.9(2) (emphasis added). Thus, the maximum amount capable of distribution under a trust is deemed an available resource to the beneficiary, regardless of whether the trustee actually exercises his or her discretion. *See Forsyth,* 629 A.2d at 386; *Lebow,* 740 N.E.2d at 982; *Cohen,* 668 N.E.2d at 777; *In re Lennon,* 683 A.2d at 241. In short, "if there is *any* state of affairs, at *any* time during the operation of the trust, that would permit the trustee to distribute trust assets to the [beneficiary], those assets will count in calculating ... Medicaid eligibility." *Lebow,* 740 N.E.2d at 983.

■ We therefore disregard the limitation on the trustee's discretion in this case to obtaining prior court approval. *See Cohen,* 668 N.E.2d at 783. Accordingly, we conclude the entire trust corpus of $304,702.52 is an available resource to David Jr. Consequently, the trust exceeds the $2000 resource cap and precludes

David Jr. from receiving Medicaid benefits.

■ Alternatively, Marcia contends the trust falls within the exemption of rule 441–75.9(1) for trusts created before April 7, 1986, for mentally retarded children residing in an ICF/MR. Although the trust was created in 1982, David was not, and has never, resided in an ICF/MR. Nevertheless, Marcia contends the exemption should apply because their family home is the functional equivalent of an ICF/MR. Marcia bases this argument on the Medicaid MR waiver services provisions of rule 441–83, which permit the provision of Medicaid benefits to certain mentally retarded individuals residing at home instead of a residential care facility. Because state Medicaid provisions deem their home to be an ICF/MR for MR waiver services, Marcia contends, so should we for purposes of the MQT provisions.

We decline to extend the exemption of rule 441–75.9(1) for several reasons. First, we can find no provision in rule 441–83 referring to the "functional equivalent" of an ICF/MR. Thus, we do not know whether the department does in fact consider homes receiving MR waiver services as the functional equivalent of an ICF/MR. In fact, the testimony of the department's Medicaid policy specialist in this case indicated the department believes otherwise. Specifically, the Medicaid policy specialist testified she did not believe the Strands' home was the functional equivalent of an ICF/MR because if it was an ICF/MR, HCBS would be unnecessary. The purpose of HCBS is to provide services ordinarily provided at an ICF/MR that the family caregiver is unable to offer at home. Moreover, the fact that David Jr. is not required to reside in an ICF/MR to receive MR waiver service benefits does not preempt the MQT provisions. Otherwise,

the exemption of rule 441–75.9(2) would be superfluous.

Additionally, the Strands' home simply does not rise to the level of an ICF/MR. Iowa Administrative Code rule 441–83.60 defines an ICF/MR as:

> [A]n [1] institution that is [2] primarily for the diagnosis, treatment, or rehabilitation of persons who are mentally retarded and provides, [3] in a protected residential setting, [4] ongoing evaluation, planning, 24 hour supervision, coordination and integration of health or related services to help each individual function at the greatest ability and [5] is an approved Medicaid vendor.

The federal statute employs a similar, but more detailed, explanation. *See* 42 U.S.C. § 1396d(d). Clearly, the Strands' home cannot satisfy all, or any, of the elements. Accordingly, the claim for an exemption under rule 441–75.9(1) is denied.

We recognize the Strands may not be an affluent family, and may have not acted with the intent to defraud the government in creating the trust in this case. Yet, David Jr. would clearly be ineligible for Medicaid benefits if his funds were not held in trust. *See Ronney,* 532 N.W.2d at 914. The Medicaid program is only available to individuals and families who do not possess adequate funds for basic health services. *Cohen,* 668 N.E.2d at 772. It is "'the payer of last resort.'" *Allen,* 542 N.W.2d at 752 (citation omitted). Families, including the Strands, must spend other available resources first, and when those resources are completely depleted, may apply for Medicaid benefits. *See Forsyth,* 629 A.2d at 385 n. 12; *Cohen,* 668 N.E.2d at 774; *Allen,* 542 N.W.2d at 752. Although we commend and admire Marcia for her unending devotion to her son's support, the result under the statute is clear. The district court properly denied the claim for Medicaid benefits.

## V. Conclusion.

We conclude the trust in this case was a MQT under Iowa Administrative Code rule 441–75.9(1). As conservator, Marcia was acting on behalf of David Jr. when they created the trust with his settlement funds. Because the entire trust corpus was available to David Jr., he was ineligible for Medicaid benefits. Furthermore, the trust is not entitled to an exemption from treatment as a MQT. We deem any additional arguments not specifically addressed unpreserved for our review. The district court correctly denied the petition for judicial review.

**AFFIRMED.**